**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

_____

|  |  |
|---|---|
| DELTA SIGMA THETA SORORITY, INC., | ) |
| 1707 New Hampshire Avenue, NW | ) |
| Washington, District of Columbia 20009 | ) |
|  | ) |
| *Plaintiff,* | ) |
|  | ) |
| *v.* | ) |
|  | ) Case No. _____ |
| ALLEN PROFESSIONAL GRAPHICS GROUP, LLC, | ) |
| d/b/a STUFF 4 GREEKS; ZEUS'CLOSET; and | ) **JURY TRIAL DEMANDED** |
| FRAT BRAT | ) **INJUNCTIVE RELIEF SOUGHT** |
| 1339 Marietta Boulevard, Suite C | ) |
| Atlanta, Georgia 30318, | ) |
|  | ) |
| ETHAN K. ALLEN, | ) |
| 2760 Glenlocke Circle, NW | ) |
| Atlanta, Georgia 30318, | ) |
|  | ) |
| and | ) |
|  | ) |
| MONICA ALLEN, | ) |
| 2760 Glenlocke Circle, NW | ) |
| Atlanta, Georgia 30318, | ) |
|  | ) |
| *Defendants.* | ) |

_____)

## COMPLAINT

Plaintiff, Delta Sigma Theta Sorority, Incorporated ("Delta" or "Plaintiff"), for its

Complaint against Defendants Ethan K. Allen ("Mr. Allen"), Monica D. Allen ("Ms. Allen"),

and Allen Professional Graphics Group, LLC ("APGG") (All Defendants herein collectively

referred to as "Defendants"), complains and alleges as follows:

**INTRODUCTION**

1.      This is an action by Delta against Defendants to enjoin them from the following continuing actions and activities, which have damaged Delta and continue to damage Delta:  (a) breach of contract; (b) infringement of Delta's federally-registered and otherwise protected trademark and service marks (collectively "Marks") by, *inter alia,* advertising and selling goods bearing Delta's Marks without a Delta vendors license and by unauthorized methods, including through various online avenues; (c) trademark counterfeiting; (d) unfair competition with Delta and its proper licensees in violation of the Lanham Act; (e) dilution of Delta's Marks; and (f) falsely and knowingly holding themselves out as Delta licensees, and their merchandise as authorized merchandise, when in fact they are not presently licensed by Delta, resulting in the likelihood of consumer confusion.

2.      Defendants should be (a) enjoined from continuing their infringement and dilution of Delta's Marks; (b) required to disgorge profits to Delta that they have realized from selling infringing merchandise or selling merchandise in an unauthorized manner; (c) required to pay damages to Delta in accordance with the applicable law; and (d) required to pay Delta's costs and reasonable attorneys' fees in light of Defendants' willful and egregious conduct.

**PARTIES**

3.      Delta is a not-for-profit membership service organization that was founded in 1913 on the campus of Howard University and is incorporated under the laws of the District of Columbia.  Its offices are located at 1707 New Hampshire Avenue, Washington, District of Columbia, 20009.

4.      Defendant APGG is a Georgia limited liability company with its registered business address at 1339 Marietta Boulevard, Suite C, Atlanta, Georgia 30318.

5.      Defendant Mr. Allen is an individual who, upon information and belief, resides at 2760 Glenlocke Circle, NW, Atlanta, Georgia 30318.  Upon information and belief, Mr. Allen is a co-owner (with Ms. Allen), Chief Executive Officer ("CEO"), managing member and registered agent of Defendant APGG.

6.      Defendant Ms. Allen is an individual who, upon information and belief, resides at 2760 Glenlocke Circle, NW, Atlanta, Georgia 30318.  Upon information and belief, Ms. Allen is co-owner (with Mr. Allen), Chief Financial Officer ("CFO"), Secretary, and managing member of Defendant APGG.

### JURISDICTION AND VENUE

7.      This is a civil action for injunctive relief and damages based on breach of contract under District of Columbia law and trademark infringement; counterfeiting; unfair competition/false designation of origin; and trademark dilution under the federal Lanham Act. Additionally, this is an action, as to Ms. Allen, for contributory trademark infringement, contributory counterfeiting, contributory unfair competition and contributory trademark dilution under federal law.

8.      This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331, because this action arises under the laws of the United States and 28 U.S.C. § 1338, because this action arises under the trademark laws of the United States.

9.      This Court has jurisdiction over this matter pursuant to 15 U.S.C. § 1121(a) without regard to the amount in controversy or to diversity or lack of diversity of citizenship of the parties.

10.     This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1367 under principles of pendent and ancillary jurisdiction because the state and federal claims arise from a

common nucleus of operative facts and are so intertwined as to make the exercise of pendent and ancillary jurisdiction appropriate.

11.    Defendants have consented to this Court's exercise of personal jurisdiction and to venue in this district, as described below:

a.    The License Agreement ("Agreement") that Defendants breached provides that the Agreement shall be interpreted in accordance with the laws of the District of Columbia and applicable federal law, and that the parties shall bring any action or proceeding relating to the Agreement (including its interpretation, performance or breach, and the parties' rights and obligations relating to the agreement) in the federal or local courts of the District of Columbia and in no other forum.  Pursuant to the forum selection provision, Defendants waived any objection to personal jurisdiction or venue.[1]

b.    Defendant APGG was the licensee under the Agreement.

c.    Mr. Allen was the signatory of the Agreement.  He is the co-owner, managing member, and CEO for the company, and as such, was responsible, with Ms. Allen, for ensuring the company's compliance with the License Agreement.

d.    Ms. Allen is the co-owner (with Mr. Allen), managing member, CFO, and Secretary of APGG.  As co-owner and managing member, she was responsible, along with Mr. Allen, for ensuring the company's compliance with the License Agreement.  Moreover, as CFO, Ms. Allen was responsible for ensuring APGG's compliance with certain obligations under the contract, including but not limited to obligations under Section 6(b) of the Agreement (recordkeeping requirements).  Accordingly, Ms. Allen is so closely related to the contractual relationship that it was foreseeable that she would be bound by the forum selection and

---

[1]    A copy of the License Agreement is provided as Attachment A to Exhibit 3 (Affidavit of Nicole Lenon Johnson).

jurisdiction clause, and she should be so bound despite that she did not personally sign the Agreement.[2]

### FACTUAL BACKGROUND

### *Reputation and Goodwill Are Important to Delta*

12.     Delta is a well-established and highly regarded internationally recognized not-for-profit membership service organization that is dedicated to public service.   Delta was founded in 1913 on the campus of Howard University by twenty-two collegiate women who sought to establish an organization that would serve as a vehicle for change within their individual communities and within society at large.   The organization's first act was participating in the March 3, 1913 Suffrage March for Women's Right to Vote.   Delta was the only African American women's organization to participate in the March, and its presence raised Delta's profile and helped shape the future of the organization.   From this seminal act, Delta has remained a recognized leader at the vanguard of social change and cultural and educational advancement.

13.     Since its founding in 1913, Delta has been known to its members, other members of the National Pan-Hellenic Council (an umbrella organization of the nine African American Greek letter organizations), educational institutions, and the general public, not only by its official name, "Delta Sigma Theta Sorority, Incorporated," but also as "Delta," "Delta Sigma Theta," "Delta Sorority," and "DST."   It also is known and recognized by its Greek letter symbols -- $\Delta\Sigma\Theta$.   Any iteration of Delta's name and its Greek letter symbols is famous and

---

[2]        For the court's convenience, *see, e.g.*, *Sabre Int'l Sec. v. Torres Advanced Enter. Solutions, LLC*, 2014 U.S. Dist. LEXIS 81349 (D.D.C. 2014) (denying non-signatories' motions to dismiss for lack of personal jurisdiction and upholding forum selection clause); *Kotan v. Pizza Outlet, Inc.*, 400 F. Supp. 2d 44 (D.D.C. 2005) (finding forum selection clause to bind non-signatory entity opposing transfer of case when principal of entity was signatory to agreement and entity's founding was related to purpose of contract).

recognized as belonging only to Delta, including its color combination of crimson and cream or red and white, along with its founding year.

14.     Delta now has more than 940 collegiate and alumnae chapters located in forty-five states of the United States of America and the District of Columbia, as well as in eight foreign countries.  Since its founding, Delta has grown to tens of thousands of dues-paying members, and tens of thousands of other members who affiliate with Delta.  At Delta's national convention in the District of Columbia in 2013, more than 30,000 members attended.  More than 10,000 members typically attend Delta's biennial national convention, irrespective of the city in which the convention is held, and each of seven regional conferences (held during the years when there is no national convention) typically hosts thousands of members.

15.     Delta's growth has increased its zeal to carry out its Founders' mission.  In 1956, Delta established a formal mechanism -- its Five Point Program Thrust -- to provide service to a greater segment of society.  Its Five Point Thrust includes programs emphasizing: (1) economic development; (2) educational development, (3) international awareness and involvement, (4) physical and mental health, and (5) political awareness and involvement.  Delta's profile, name, reputation, and goodwill are continually being enhanced through such much acclaimed public service programs.

16.     The following brief list of the hundreds of nationally-acclaimed Delta members who remain active (or remained active until their death) highlights a key reason why Delta so values its Marks and seeks to control their use:  Marcia L. Fudge, a past National President of Delta, currently serves in the United States House of Representatives.  Dr. Regina M. Benjamin served as Surgeon General of the United States under President Barack Obama.  Alexis M. Herman, a past Executive Board member, served as Secretary of Labor under President Bill

Clinton.   Barbara Jordan, a former National Treasurer of Delta, served in the United States House of Representatives with exceptional distinction.   Patricia Roberts Harris, Delta's first Executive Director, served as Ambassador to Luxembourg and was appointed to two cabinet positions by President Jimmy Carter (Secretary of Housing and Urban Development and Secretary of Health and Human Services).

### *Delta Vigorously Protects Its Trademarks*

17.     Delta owns, and has registered on the Principal Register of the United States Patent and Trademark Office ("USPTO"), the Marks depicted in Exhibit 1.

18.     Delta also owns unregistered common law marks, including, among others, "Delta" "Delta Sorority," the Greek letter $\Delta$, and "1913," when they are used with Delta's colors (crimson and cream or red and white), or used otherwise as to indicate an association with Delta. These common law marks are as depicted in Exhibit 2.

19.     Delta's Marks are strong and famous.

20.     Delta vigorously protects its Marks. Among other steps it takes to protect its Marks, Delta employs a staff member whose sole responsibility is to protect Delta's intellectual property, monitor its appropriate use, and pursue violators.   *See* Ex. 3 (Aff. of N. Lenon Johnson, Delta's Intellectual Property Specialist).

21.     Each year, Delta receives hundreds of requests from vendors seeking a license to sell merchandise imprinted with Delta's name(s) and/or its other protected symbols or Marks. Delta grants a license to only those vendors who meet Delta's licensing requirements and agree to Delta's licensing terms and conditions.   Over the years, Delta has granted hundreds of such licenses.  Licensed vendors actively compete for the limited available spaces to advertise and sell merchandise at Delta's national conventions and other events.   *See* Ex. 3 at 4, 5.

22.     Any person or entity interested in obtaining a license to use Delta's name or any of its Marks must complete an application.  If approved after careful review, the vendor must execute a License Agreement and agree to Delta's *Operating Guidelines and Code of Conduct for Vendors* ("Vendor Code of Conduct").  These documents make clear the importance Delta attaches to its intellectual property, and the vendor's compliance obligations.

23.     The License Agreement provides, among other requirements, that the licensed vendor shall confine its sales of merchandise bearing Delta's Marks to Delta members and Delta-approved events; that such sales shall occur solely during the term of the License Agreement; that the licensed vendor must put in place safeguards designed to protect against unauthorized sales of merchandise bearing Delta's Marks, including sales to non-members; and that Delta has the right to inspect samples of designs and samples of any merchandise prior to its sale or distribution.  *See* Ex. 3, Attach. A (APGG License Agreement) at §§ 2; 3; 4.a-c; 11.     The Vendor Code of Conduct, which is distributed with all licenses and is incorporated by reference into the License Agreement, reiterates the restrictions Delta imposes upon the use of its Marks. See Ex. 3, Attach. A at 4, § 6.f. (Provision of License Agreement requiring compliance with the Vendor Code of Conduct); Ex. 3, Attach. A at 11 (Vendor Code of Conduct).  Delta receives licensing fees and, in some cases, royalties from its licensed vendors.

### Defendants' Infringement of Delta's Marks

24.     Upon information and belief, Defendants Mr. Allen and Ms. Allen are co-owners, officers and managing members of Defendant APGG.  Mr. Allen serves as the company's CEO, and Ms. Allen serves as its CFO and Secretary.  *See* Ex. 4 (APGG Officer Information filed with Georgia Secretary of State) and Ex. 5 (LinkedIn profiles of Mr. and Ms. Allen).[3]  As such, Mr.

---

[3]     Mr. Allen often refers to himself as Ethan King, but upon information and belief, recently changed his name from Ethan Adika Kwame Allen to Ethan King Allen.  *See* Ex. 6 (Notice of Petition for Name Change).

Allen and Ms. Allen are the legal owners of APGG's Stuff4Greeks, FratBrat, and several other brands, and also own the Zeus' Closet store, located at 1339 Marietta Blvd., Suite B, Atlanta, GA 30318.

25.     Defendant APGG is a self-described "multi-brand creative services firm" which, through its Stuff4Greeks, FratBrat and Zeus' Closet brands, sells custom clothing and other merchandise.  *See* Ex. 7 (APGG Website Information)   Defendants sell and/or advertise their merchandise for sale at public events, in the Zeus' Closet retail store,[4] and on their websites, including:

http://www.apgg.net;

http://www.s4g.com;

http://www.stuff4greeks.com;

http://www.fratbrat.com;

http://www.zeuscloset.com.

26.     Defendants also advertise their online and physical stores and the store offerings on Facebook, Instagram, Pinterest, Twitter, and other websites, including:

http://ethanking.com/services/clothing-design/

www.facebook.com/stuff4greeks;

www.facebook.com/fratbrat;

www.facebook.com/zeuscloset;

www.instagram.com/stuff4greeks;

---

[4]     The Stuff4Greeks.com website is linked to the Zeus' Closet online presence, www.zeuscloset, specifically related to sorority and fraternity themed merchandise.  If one clicks on "Fraternity/Sorority Wear" on the Zeus' Closet internet site, one is routed to www.s4g.com.  Stuff4Greeks.com is also marketed by Defendants as a stand-alone webstore.

www.instagram.com/zeuscloset;

www.pinterest.com/stuff4greeks;

www.twitter.com/zeuscloset;

www.twitter.com/stuff4greeks;

www.twitter.com/fratbrat.

27.     Mr. Allen applied for and was granted a Delta certified vendor license for APGG. Mr. Allen signed the License Agreement on behalf of APGG, and its effective date was February 1, 2012.  *See* Ex. 3, Attach. A.[5]

28.     Delta terminated APGG's license on November 8, 2012, due to Defendants' failure to comply with the terms of the Agreement, including Defendants' refusal to stop advertising merchandise bearing Delta's Marks on the internet.  *See* Ex. 3, Attach B (2012 Images of Merchandise Bearing Delta's Marks Advertised on the Internet) and Ex. 3, Attach. C (Notice of Termination and proof of delivery).  In the Notice of Termination, and in accordance with the provisions of the License Agreement, Delta directed Defendants to cease and desist using Delta's Marks and to immediately send any remaining inventory of merchandise bearing Delta's Marks to Delta.  Ex. 3, Attach. C at 1, 2.

29.     Despite Delta's termination of APGG's License Agreement and direction that Defendants cease and desist using Delta's Marks, Defendants are marketing merchandise bearing

---

[5]      Note that the Defendants use both Suites B and C at the 1339 Marietta Blvd., Atlanta GA 30108 address. Suite B is the address Mr. Allen used on his application for a license.  Suite C is used for APGG on the documents they have filed with the Georgia Secretary of State's office.

         The 2012 License Agreement was APGG's second license agreement with Delta.  A previous license was issued in 2008 and expired in 2010.  Delta had some difficulties with Defendants' lack of compliance with the terms of the first License Agreement, but agreed to issue a second license believing the parties could resolve outstanding issues and that Defendants would comply with the terms of the 2012 License Agreement.  Accordingly, there are some references to issues and previous communications between Delta and Defendants related to the time period before the 2012 license was issued in some of the correspondence between Delta and Defendants filed with respect to this action.  However, Delta's claims in this action relate to Defendants' activities with respect to, and in breach of, the terms of the 2012 License Agreement.

Delta's Marks without Delta's authorization, including at their physical store, Zeus' Closet, and on the internet.  *See* Ex. 3, Attach. E (recent images of infringing merchandise advertised on the internet).  In doing so, they unlawfully trade on Delta's name, reputation, goodwill, and the strength of members' and the public's association of Delta's Marks with Delta.

30.    Since the termination of the 2012 License Agreement, Defendants have intentionally, willfully, and deliberately advertised for sale on their websites; Facebook; Instagram; Pinterest; Twitter; and in their retail store, *inter alia*, the following unauthorized merchandise:

a.    Jackets (including blazers, varsity letterman jackets, track jackets, and cardigans) bearing Delta's registered trademarks, including "ΔΣΘ", "Delta Sigma Theta", and Delta's Minerva Crest;

b.    Sportswear (including tee shirts, polo shirts, wrist bands, button down shirts, hoodies, and pants) bearing Delta's registered trademarks, including "ΔΣΘ", "Delta Sigma Theta", and Delta's Minerva Crest;

c.    Accessories and miscellaneous items (including luggage tags, umbrellas, dog tags, tote bags, scarves, graduation stoles, license plate holders, purse hangers, bags, paddles, chairs, baby bibs, and key chains) bearing Delta's registered trademarks including "ΔΣΘ" and Delta's common law marks, "1913" and Lady Fortitude;

d.    Hats and caps bearing the ΔΣΘ mark, "Delta Sigma Theta", and Delta's Minerva Crest; and

e.    Necklaces and lanyards bearing Delta's registered trademarks including "ΔΣΘ" and Delta's common law marks, Lady Fortitude and "1913."

31.     Upon information and belief, Mr. Allen and Ms. Allen are and have been, at all relevant times, the moving, active, conscious forces behind Defendants' infringement of Delta's marks and/or have been alter egos of APGG and have used the company for an improper purpose, causing injury to Delta.

32.     Upon information and belief, Mr. Allen and Ms. Allen were the operators of the websites, retail store, and Facebook, Instagram, Pinterest and Twitter pages by which the unauthorized merchandise was marketed.

33.     Upon information and belief, Mr. Allen and Ms. Allen have filled orders for unauthorized merchandise.

34.     Given APGG's former licensed vendor status, Defendants have known for years that a license is required to sell merchandise bearing Delta's Marks and that without a license Defendants are not authorized to sell such merchandise.  They also have known for years that even licensed vendors may sell only Delta-approved merchandise; may sell merchandise bearing Delta's Marks only to members; may sell such merchandise only at Delta-approved functions; and may sell such merchandise only during the term of the License Agreement.  They further know that merchandise bearing Delta's Marks may not be sold through catalogues, the Internet, other mail order systems, or mechanisms that are available to the general public.  Despite this knowledge, the Defendants continue to use Delta's Marks in commerce willfully, intentionally, and deliberately since the termination of the 2012 License Agreement, to advertise and sell merchandise imprinted with Delta's Marks in their retail store; on the company's various websites; on Facebook; Instagram; Pinterest; and Twitter.

35.     Defendants   falsely,   deceptively,   and   brazenly   represent   on   the www.stuff4greeks.com website that they are licensed, and advertise their illegal, infringing merchandise bearing Delta's Marks as "Official Licensed Product."  *See* Ex. 3, Attach. E at 2.

### *Notice to Defendants of Infringing Activities*

36.     Delta has demanded that Defendants cease using its Marks.  By letter dated November 8, 2012, Delta, by and through its counsel, terminated the APGG License Agreement for non-compliance and demanded that Defendants immediately cease and desist all use of Delta Marks and send any inventory bearing Delta's Marks to Delta.  Ex. 3, Attach. C.  This notification was in accordance with subparagraph 13(a)(ii) of the License Agreement, which provides that Delta may terminate the license immediately upon breach of the Agreement or unauthorized use of the Marks.  It was also in accordance with subparagraph 13(b)(i) of the License Agreement, which provides that upon termination of the License Agreement, licensee must immediately cease and desist using Delta's Marks, and must destroy or send any inventory of merchandise bearing Delta's Marks to Delta, as directed by Delta.

37.     After observing that Defendants are advertising and selling merchandise bearing Delta's Marks online, Delta sent another cease and desist letter to Defendants, dated July 29, 2014.  A true and correct copy of the July 29, 2014 letter, including proof of its delivery, is attached to Exhibit 3 as Attachment D.  Defendants did not respond to this letter.

38.     Despite termination of APGG's certified vendors license in November of 2012; despite being directed upon termination to remove all unauthorized merchandise from the various internet sites used to advertise unauthorized merchandise, in accordance with the terms of the License Agreement; despite  having been formally notified that they were infringing on Delta's Marks; and despite having been again directed to cease marketing unauthorized merchandise,

Defendants continue to advertise and offer for sale merchandise that infringes on Delta's intellectual property rights.  *See* Ex. 3, Attach. E (2014 images of infringing merchandise marketed on internet and related advertisements).  Defendants' acts are willful, intentional, egregious, and with full knowledge and conscious disregard of Delta's rights in its Marks.

## COUNT I
### BREACH OF CONTRACT
### UNDER DISTRICT OF COLUMBIA LAW

39.  Delta repeats and realleges the allegations of paragraphs 1 through 38 above, as though fully set forth herein.

40.  Delta and APGG, by and through Defendant Mr. Allen, entered into a valid License Agreement effective February 1, 2012.  The terms of the License Agreement bind APGG; Mr. Allen as co-owner, managing member, and agent of APGG, license applicant and signatory to the License Agreement, and as CEO of the company with various management responsibilities related to the Agreement; and Ms. Allen as co-owner, managing member, and agent of APGG, and as CFO and Secretary of the company with recordkeeping and other financial management obligations under the Agreement.

41.  The Defendants breached the license agreement first by marketing merchandise bearing Delta's Marks on the internet, which is prohibited by the License Agreement.  *See* Ex. 3, Attachs. A, B.

42.  Pursuant to Section 13 of the 2012 License Agreement, Defendants had an obligation, upon termination of the License Agreement for any reason, immediately to cease and desist all use of Delta's Marks, including the manufacture of merchandise bearing Delta's Marks, and the marketing of merchandise bearing Delta's Marks.  *See* Ex. 1, § 13(b)(i).

43.     Pursuant to Section 13 of the License Agreement, Defendants had an obligation, upon termination of the Agreement, to send to Delta or destroy all merchandise and materials in their inventory bearing Delta's Marks, as Delta directed, unless Delta in its sole discretion granted a continuation period of sixty days following termination for sale of remaining inventory, which Delta did not.  *Id.*

44.     Delta terminated the License Agreement on November 8, 2012.  Ex. 3, Attach. C. Delta's November 8, 2012 termination letter directed that all inventory bearing Delta's Marks be sent to Delta immediately.  Ex. 3, Attach. C, at 2.

45.     Notwithstanding termination of the License Agreement, Defendants have continued to manufacture, advertise, and sell merchandise bearing Delta's Marks.

46.     Defendants have not sent Delta their inventory of merchandise and materials bearing Delta's Marks.  To the contrary, they have continued to manufacture unauthorized merchandise for illegal advertisement and sale.

47.     The Defendants breached the termination provisions of the License Agreement.

48.     The Defendants' breach of the terms of the License Agreement has been knowing, willful, and egregious, and has resulted in the unauthorized and illegal use of Delta's Marks in commerce by Defendants.

49.     As a result of Defendants' breach of the License Agreement, Delta has sustained damages of an amount yet to be determined.

50.     Delta is entitled to equitable relief, including injunctive relief under Section 8 of the License Agreement for Defendants' unauthorized use of Delta's Marks.

51.     Delta is entitled to damages, including punitive damages, as well as costs and attorneys' fees, in light of the intentional, willful, and egregious nature of Defendants' breach of the License Agreement.

## COUNT II
### FEDERAL TRADEMARK INFRINGEMENT UNDER SEC. 32(1) OF THE LANHAM ACT
### 15 U.S.C. § 1114(1)
**(As to All Defendants)**

52.     Delta repeats and realleges the allegations of paragraphs 1 through 51 above, as though fully set forth herein.

53.     Without Delta's authorization or consent, Defendants have used and continue to use Delta's federally registered Marks in commerce in a manner that is likely to cause consumer confusion with respect to the source and origin of the unauthorized merchandise and to deceive consumers as to the affiliation, connection, or association of Delta with Defendants and their products, in violation of Section 32(1) of the Lanham Act, 15 U.S.C. § 1114(1).

54.     Defendants' acts have been deliberate, willful, and intentional, with full knowledge of their illegality, and in conscious disregard of Delta's rights in the Marks.

55.     As a direct and proximate result of Defendants' wrongful acts, Delta has suffered and continues to suffer damage to its Marks, its reputation, and its goodwill, as well as loss of revenue and monetary damages in an as-yet undetermined amount.

56.     Unless restrained, Defendants will continue to use Delta's Marks in violation of the law, and will cause irreparable damage to Delta.  Delta has no adequate remedy at law and is entitled to an injunction restraining Defendants from engaging in further acts of infringement.

57.     Delta is entitled to recover from Defendants the gains, profits and advantages that Defendants have obtained as a result of their wrongful acts, as well as damages and costs,  as set forth in 15 U.S.C. § 1117(a).

58.     Because the trademark infringement in this case has been and continues to be willful, knowing, and egregious, Delta is entitled to an award of attorneys' fees pursuant to 15 U.S.C. § 1117(a)(3).

**COUNT III**
**FEDERAL FALSE DESIGNATION/UNFAIR COMPETITION UNDER**
**SEC. 43(a) OF THE LANHAM ACT**
**15 U.S.C. § 1125(a)**
**(As to All Defendants)**

59.     Delta repeats and realleges the allegations of paragraphs 1 through 58 above, as though fully set forth herein.

60.     Defendants' acts falsely represent Defendants' products as affiliated, connected, and associated with, and as sponsored or approved by Delta, in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

61.     Defendants' acts have caused, or are likely to cause confusion, mistake, or deception in relation to Delta and with respect to authorized products bearing the Delta Marks, or to result in the belief by purchasers and others that Defendants' products are affiliated, connected, and associated with and are sponsored or approved by Delta.

62.     Defendants' acts constitute unfair competition with Delta.

63.     Defendants' acts have been willful, intentional, or in reckless disregard of Delta's rights.

64.     By reason of Defendants' acts, Delta has suffered and will continue to suffer damage and injury to its business, its reputation, and its goodwill, and will sustain losses of revenues. Delta has already suffered monetary damages in an as-yet undetermined amount.

65.     Defendants' acts are greatly and irreparably damaging to Delta and will continue to damage Delta unless enjoined by this Court. Delta is without adequate remedy at law.

66.     Plaintiff is entitled to recover Defendants' profits, damages, and costs, pursuant to 15 U.S.C. § 1117(a).

67.     Plaintiff should be awarded attorneys' fees pursuant to 15 U.S.C. § 1117(a) in light of Defendants' knowing, willful, and egregious conduct, as well as relief pursuant to 15 U.S.C. § 1118.

**COUNT IV**
**FEDERAL TRADEMARK DILUTION UNDER SEC. 43(c) OF THE LANHAM ACT**
**15 U.S.C. § 1125(c)**
**(As to All Defendants)**

68.     Delta repeats and realleges the allegations of paragraphs 1 through 67 above, as though fully set forth herein.

69.     Delta's Marks are widely recognized by the general consuming public of the United States, and are a source of designation.  Delta's Marks are inherently distinctive, and have acquired distinction through Delta's extensive, continuous, and exclusive use.

70.     Defendants' acts began long after Delta's Marks became distinctive and famous.

71.     Defendants' acts are likely to dilute the distinctive quality of Delta's Marks in violation of Section 43(c) of the Lanham Act, 15 U.S.C. § 1125(c).

72.     By reason of Defendants' acts, Delta has suffered and will continue to suffer irreparable damage to Delta's trademarks, goodwill, and reputation and will sustain serious losses of revenues and profits.  Delta has already suffered monetary damages in an as-yet undetermined amount.

73.     Delta has no adequate remedy at law and is entitled to a preliminary and permanent injunction restraining Defendants from using Delta's Marks in connection with the promotion, advertisement, or sale of any goods or services.

74.      Delta is entitled to recover from Defendants the actual damages that it sustained as a result of Defendants' wrongful acts, and is further entitled to recover from Defendants the gains, profits, and advantages that Defendants have obtained as a result of their wrongful acts.

75.      Defendants' acts have been willful, with full knowledge of their illegality, and with conscious disregard of Delta's rights in the Marks.

76.      Because of the willful nature of Defendants' actions, Delta is entitled to all remedies available under 15 U.S.C. §§ 1117 and 1118, in accordance with 15 U.S.C. § 1125(c)(5).

**COUNT V**
**FEDERAL TRADEMARK COUNTERFEITING UNDER SECTION 32(1) OF THE LANHAM ACT**
**U.S.C. § 1114(1)**
**(As to All Defendants)**

77.      Delta repeats and realleges the allegations of paragraphs 1 through 76 above, as though fully set forth herein.

78.      As alleged above, defendants have infringed and willfully diluted federally registered trademarks, in violation of 15 U.S.C. 1114(a)(1); 15 U.S.C. 1125(a); and 15 U.S.C. 1125(c).

79.      The alleged violations, as they pertain to Delta's federally registered Marks, have involved, and continue to involve Defendants' use of "counterfeit marks" as defined by 15 U.S.C. §1116(d)(1)(B), in connection with the sale, offering for sale, and/or distribution of goods, with Defendants' knowledge that such marks are and have been counterfeit marks.

80.      As a direct and proximate result of Defendants' wrongful acts, Delta has suffered and continues to suffer damage to its Marks, its reputation, and its goodwill, as well as loss of revenue and monetary damages in an as-yet undetermined amount.

81.     Unless restrained, Defendants will continue to use Delta's Marks in violation of the law, and will cause irreparable damage to Delta.  Delta has no adequate remedy at law and is entitled to an injunction restraining Defendants from engaging in further acts of infringement.

82.     Plaintiff is entitled to treble damages pursuant to 15 U.S.C. 1117(b), or in the alternative statutory damages pursuant to 15 U.S.C. 1117(c), as well as costs, for the use by Defendants of counterfeit marks in connection with the sale, offering for sale, or distribution of goods.

83.     Plaintiff should be awarded attorneys' fees pursuant to 15 U.S.C. 1117(a) in light of Defendants' knowing, willful, and egregious conduct, as well as relief pursuant to 15 U.S.C. 1118.

## COUNT VI
### FEDERAL CONTRIBUTORY TRADEMARK INFRINGEMENT
### 15 U.S.C. § 1114(1)
### (As to Ms. Allen)

84.     Delta repeats and realleges the allegations of paragraphs 1 through 83 above, as though fully set forth herein.

85.     Upon information and belief, Ms. Allen has knowingly and/or with "willful blindness," contributed materially to the direct infringement of Delta's Marks by Defendants APGG and Mr. Allen by, *inter alia*,

a.     Managing and maintaining the financial infrastructure for APGG by which Defendants have conducted transactions in unauthorized merchandise and conducted transactions in support of their infringing activities, in conscious disregard of Delta's rights in its Marks;

b.     Providing essential business support services for APGG, despite knowledge of and/or "willful blindness" regarding the Defendant APGG's

and Mr. Allen's infringing activities, and thereby supporting, facilitating, and ensuring the continuation of their infringing activities, including serving as APGG's Chief Financial Officer; serving as APGG's Secretary; ordering and receiving shipments of materials necessary to manufacture unauthorized merchandise; and manufacturing and/or having manufactured goods for sale bearing Delta's Marks.

86.     Upon information and belief, unless restrained, Defendant Ms. Allen will continue to contribute to the infringement of Delta's Marks, causing irreparable damage to Delta.  Delta has no adequate remedy at law and is entitled to an injunction restraining Ms. Allen from engaging in further acts of infringement and/or contributing to the infringement of Delta's Marks.

87.     Ms. Allen's material contribution to the infringement of Delta's Marks by APGG and Mr. Allen has been knowing and/or with "willful blindness," entitling Delta to an award of attorneys' fees pursuant to 15 U.S.C. 1117(a)(3).

88.     Ms. Allen is appropriately liable as a joint tortfeasor along with Defendants APGG and Mr. Allen, for any damages, costs, and fees assessed related to the infringement of Delta's Marks.

**COUNT VII**
**FEDERAL CONTRIBUTORY COUNTERFEITING**
**15 U.S.C. § 1114(1)**
**(As to Ms. Allen)**

89.     Delta repeats and realleges the allegations of paragraphs 1 through 88 above, as though fully set forth herein.

90.     Ms. Allen has contributed materially to the use of counterfeits of Delta's Marks and the advertisement and sale of counterfeit-marked merchandise by Defendants APGG and Mr. Allen.

91.     Unless restrained, Ms. Allen will continue to contribute to the counterfeiting of Delta's Marks, causing irreparable damage to Delta.  Delta has no adequate remedy at law and is entitled to injunctive relief restraining Defendants Mr. and Ms. Allen from engaging in further acts of contributory counterfeiting.

92.     Ms. Allen's material contribution to the counterfeiting of Delta's Marks has been knowing and/ or with willful blindness, entitling Delta to an award of attorneys' fees pursuant to 15 U.S.C. 1117(a)(3).

93.     Ms. Allen is appropriately liable as a joint tortfeasor for any and all damages, costs, and fees associated with the counterfeiting of Delta's Marks, along with Defendants APGG and Mr. Allen.

## COUNT VIII
### FEDERAL CONTRIBUTORY FALSE DESIGNATION/UNFAIR COMPETITION
### 15 U.S.C. § 1125(a)
### (As to Ms. Allen)

94.     Delta repeats and realleges the allegations of paragraphs 1 through 93 above, as though fully set forth herein.

95.     Ms. Allen has contributed materially to the false designation of origin and unfair competition with Delta exhibited by Defendants APGG and Mr. Allen as herein alleged.

96.     Unless restrained, Ms. Allen will continue to contribute to Defendant APGG's violations, causing irreparable damage to Delta.  Delta has no adequate remedy at law and is entitled to an injunction restraining Ms. Allen from engaging in further acts of contributory false designation/unfair competition.

97.     Ms. Allen's material contributions to Defendant APGG's false designation of origin and unfair competition with Delta have been knowing and/ or with "willful blindness," entitling Delta to an award of attorneys' fees pursuant to 15 U.S.C. 1117(a)(3).

98.     Ms. Allen is appropriately liable as a joint tortfeasor for any and all damages, costs, and fees associated with false designation and unfair competition, along with Defendants APGG and Mr. Allen.

### COUNT IX
### FEDERAL CONTRIBUTORY TRADEMARK DILUTION
### 15 U.S.C. § 1125(c)
### (As to Ms. Allen)

99.     Delta repeats and realleges the allegations of paragraphs 1 through 98 above, as though fully set forth herein.

100.    Upon information and belief, Ms. Allen has knowingly and/or with "willful blindness," contributed materially to the dilution of Delta's Marks.

101.    Unless restrained, Ms. Allen will continue to contribute to Defendant APGG's dilution of Delta's Marks, causing irreparable damage to Delta.  Delta has no adequate remedy at law and is entitled to an injunction restraining Defendants Mr. and Ms. Allen from engaging in further acts of contributory infringement and dilution.

102.    Delta is entitled to injunctive relief in accordance with 15 U.S.C. § 1116, as well as remedies pursuant to 15 U.S.C. §§ 1117 and 1118, in accordance with 15 U.S.C. § 1125(c)(5).

103.    Ms. Allen's material contribution to the dilution of Delta's Marks has been knowing and or with "willful blindness," entitling Delta to an award of attorneys' fees pursuant to 15 U.S.C. 1117(a)(3).

104.    Ms. Allen is appropriately liable as a joint tortfeasor along with Defendants APGG and Mr. Allen, for any and all damages, costs, and fees associated with the dilution of Delta's Marks.

## PRAYER FOR RELIEF

WHEREFORE, Delta prays that:

1.      Judgment be entered for Delta and against Defendants, jointly and severally as appropriate under the law;

2.      Defendants, their companies, agents, servants, employees, attorneys, and all others in active concert or participation with any of them, be enjoined and restrained, during the pendency of this action, and permanently thereafter, from:

   a.      Manufacturing, transporting, promoting, advertising, publicizing, distributing, offering for sale or selling any goods bearing any trade name, registered or common law trademark, trade dress, or service mark that is owned by or confusingly similar to Delta's Marks;

   b.      Falsely implying Delta's endorsement of Defendants' goods or engaging in any act or series of acts which, either alone or in combination, constitute unfair methods of competition with Delta, and from otherwise interfering with or injuring Delta's Marks or the goodwill associated therewith;

   c.      Engaging in any act that is likely to dilute the distinctive quality of Delta's Marks and/or injures Delta's reputation;

   d.      Representing or implying that Defendants are in any way sponsored by, affiliated with, endorsed, or licensed by Delta; and

   e.      Assisting, inducing, aiding or abetting any other individual or entity from engaging in or performing any of the activities referred to in paragraphs 2(a) through (d), above;

3.      Defendants be required to file with the Court and serve upon Delta, within thirty (30) days after the entry and service of an injunction on Defendants, a written report made under oath, setting forth in detail the manner and form in which Defendants have complied with the terms of such injunction;

4.      Defendants be ordered to deliver to Delta for destruction, through Delta's counsel, all unauthorized merchandise, with all shipping and destruction costs to be borne by Defendants;

5.      Defendants be required to bear the expense of an accounting to determine any and all of Defendants' profits resulting from Defendants' acts of infringement in violation of Delta's rights under the Lanham Act and the common law and that any such gains be paid to Delta and increased as the Court finds to be just under the circumstances of this case;

6.      Defendants be required to pay an award of damages suffered by Delta according to proof at the time of trial or hearing;

7.      Defendants be required to pay an award of damages in an amount three times the amount of Delta's damages or Defendants' profits, whichever is greater, pursuant to 15 U.S.C. § 1117, and/or pay an award of statutory damages to Delta pursuant to 15 U.S.C. § 1117(c) for Defendants' intentional and willful use of Delta's Marks, including counterfeits of Delta's Marks;

8.      Defendants be required to pay an award of punitive damages for the willful, intentional, deliberate, and wanton nature of Defendants' conduct in breaching the License Agreement;

9.       Defendants be required to pay pre-judgment interest on any recovery by Delta;

10.     Defendants be required to pay Delta's costs, expenses, and all applicable attorneys' fees; and

11.     Delta be able to recover such other and further relief as the Court may deem just and proper.

### DEMAND FOR JURY TRIAL

Delta demands that this action be tried by a jury.

### [[The Next Page is the Signature Page]]

25

Dated: August 15, 2014                Respectfully Submitted,


/s Devarieste Curry_____
Devarieste Curry, Esq., DC Bar # 384621
Elisabeth Kidder, Esq., DC Bar # 987508
MCLEOD, WATKINSON & MILLER
One Massachusetts Avenue, N.W.
Suite 800
Washington, D.C. 20001-0014
Phone: (202) 842-2345
Fax:     (202) 408-7763
Email:  dcurry@mwmlaw.com
         lkidder@mwmlaw.com

*Counsel for Plaintiff*